**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CRIMINAL ACTION NO. 3:25-CR-00050-KDB-DCK**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**v.**<br><br>**TREYMAYNE LEWIS THOMPSON,**<br><br>**Defendant.** | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on Defendant's Motion to Suppress (Doc. No. 30) and Amended Motion to Suppress (Doc. No. 47). The Court has carefully considered this motion, the parties' briefs, testimony, exhibits and oral argument on the motion from the parties' counsel on August 24, 2026. For the reasons discussed at the hearing and further explained below, the Court will **DENY** the motions.

## I. LEGAL STANDARD

The Fourth Amendment ensures "[t]he right of the people to be secure . . . against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. The ultimate touchstone of the Court's analysis is whether a search is "reasonable under the circumstances." *United States v. Palmer*, 820 F.3d 640, 648 (4th Cir. 2016) (citing *Delaware v. Prouse*, 440 U.S. 648, 653–54 (1979)).

In other words, "[t]he Fourth Amendment permits law enforcement officers to seize the person or property of another without a warrant or probable cause when the officers have a "reasonable, articulable suspicion that the person has been, or is about to be engaged in criminal

activity." *United States v. Cobham*, No. 05-4175, 2006 WL 250721, at *2 (4th Cir. Feb. 2, 2006) (quoting *United States v. Place,* 462 U.S. 696, 702 (1983)) (additional citation omitted).

The government bears the burden to justify any warrantless search or seizure. *United States v. Curry*, 965 F.3d 313, 319 (4th Cir. 2020) (en banc). "When police violate the Fourth Amendment's prohibition on unreasonable searches and seizures, the government may be forbidden from using the improperly obtained evidence at trial." *United States v. Villa*, 70 F.4th 704, 716 (4th Cir. 2023). However, when moving to suppress evidence, a defendant "must show 'not only that the search of [the property] was illegal but also that he had a legitimate expectation of privacy' in that property." *United States v. Tillman*, No. 5:25-CR-97-D, 2026 WL 84878, at *4 (E.D.N.C. Jan. 12, 2026) (first quoting *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980); and then citing *Rakas v. Illinois*, 439 U.S. 128, 143 (1978)).

## II. FACTS AND PROCEDURAL HISTORY

On June 18, 2024, Officer Matthew Lerlo was monitoring the Charlotte-Mecklenburg Police Department's ("CMPD") real-time crime center cameras (also called "pole cams") as part of his duties with the Juvenile Accountability and Diversion Empowerment Unit. Hr'g Tr. ("Tr.") 1. Through the pole cam, he observed at least three young males inside a parked Jeep in the Grier Grove apartments parking lot in Charlotte, North Carolina.[1] Doc. No. 33-4 at 1; Tr. 1. Outside the vehicle, a juvenile-appearing male (the "juvenile"), wore a heavy winter coat despite the summer weather and had what appeared to be a firearm tucked into his waistband.[2] *Id.* He approached and

[1] Both Officer Lerlo and Sergeant Caleb Skipper testified that, in 2024, shooting incidents at the Grier Grove Apartments (legally known as Village Townhomes) occurred approximately once a week. Tr. 4, 39. Sergeant Skipper further testified that the complex experienced significant drug activity, reports of stolen vehicles, and ongoing gang activity. Tr. 3–4, 18, 38–40.

[2] Officer Lerlo testified that, in his experience, individuals wearing thick jackets or sweatshirts in the summer heat often do so to conceal items such as firearms in their waistbands.

eventually entered the Jeep. Tr. 12. Based on these observations, and because it is illegal under North Carolina law for juveniles to carry concealed firearms, Officer Lerlo directed officers to respond to the complex. Tr. 5, 7.

Several minutes before they arrived, a Nissan carrying approximately three young males pulled into the complex's lot and parked beside the Jeep. Tr. 5. Some of the occupants of the vehicles briefly interacted. Tr. 14–16. As officers arrived[3] and blocked the Jeep's exit, the occupants of both vehicles "quickly" and collectively exited and moved away from the officers.[4] Tr. 8. The firearm and jacket were left in the Jeep and later recovered. Tr. 10, 21. At that point, however, the officers present were uncertain who had exited which vehicle. Doc. No. 33-1 at 2; Tr. 8–9, 51. That uncertainty, combined with their knowledge of gang and firearm activity in the area, and that at least one of the young men had been armed, led the officers to detain four males suspected of having been in the Jeep, while they confirmed which vehicle each had exited. Doc. No. 33-4 at 1, Tr. 41–42. Sergeant Skipper testified that he assisted in detaining the four men and then contacted Officer Lerlo to confirm through the pole camera footage which individuals had exited the Jeep. Tr. 42. He explained that "there was talk about some of those—that we had

---

Tr. 6. As a result, the juvenile's heavy coat drew his attention, and he observed the firearm when the juvenile lifted the jacket and exposed his waistband. *Id.*

[3] Sergeant Skipper testified that the substantial police response was driven in part because of the known gang activity and frequent shootings in the complex, and in part by the tendency for police presence in the area to draw a large crowd of onlookers. Tr. 39. Consistent with that testimony, the pole cam footage and body worn camera ("BWC") recordings played during the hearing depict a sizeable crowd gathering around the officers, observing their actions, and moving about the vehicles and detained individuals.

[4] All of the vehicles in that portion of the parking lot, including the Nissan parked next to the Jeep, were blocked in by the multiple police vehicles that responded to the scene. Tr. 36.

detained could potentially have been in that Nissan. So then my goal was to make sure we had the correct ones detained and then release those that did not need to be detained."[5] *Id.*

Defendant was detained as part of that group. It took Sergeant Skipper and Officer Lerlo approximately seven minutes to determine that Defendant had not exited the Jeep.[6] Tr. 47. However, while the identification process was underway, Officer Adam Earl, who was positioned in the parking lot between the Nissan and the Jeep, testified that he observed through the Nissan's window what appeared to be a "marijuana nugget" in plain view on the front passenger dashboard. Tr. 22, 27–28. He notified Sergeant Skipper of the marijuana just as Defendant was identified. Tr. 47. Continuing to look through the Nissan's windows, Officer Earl also identified a firearm near the driver's seat and reported that observation. Tr. 22–23.

Rather than releasing Defendant, officers further detained him while they conducted a probable cause search of the vehicle. That search recovered two firearms, a digital scale with white powder residue, approximately 60 grams of crack and powder cocaine (located in the front driver's side door), 104 grams of marijuana, and $2,713 in currency. Doc. No. 33-4 at 2. Defendant's driver's license was also found in the vehicle. Tr. 35–36. Defendant was then arrested and transported to Mecklenburg County Jail for processing. *Id.*

On March 18, 2025, Defendant was indicted for possession of a firearm by a felon, possession with intent to distribute a controlled substance, and possession of a firearm in furtherance of drug trafficking. Doc. No. 1. After Defendant filed an untimely motion to suppress (Doc. No. 30), and was assigned new counsel, the Court allowed him to file an Amended Motion

[5] According to Sergeant Skipper, those who had not come "from the Jeep," including Defendant, were going to be released, but Defendant was further detained because of the marijuana and firearm observed inside the Nissan. Tr. 45.

[6] Sergeant Skipper testified that Officer Lerlo relied both on his memory and replaying of the pole cam footage to determine, detainee by detainee, the Jeep's occupants. Tr. 42.

to Suppress (Doc. No. 47). The Court held a hearing on the Amended Motion, and after the parties presented evidence and argument, denied it, noting that this written Order would follow.

## III. DISCUSSION

Defendant alleges that CMPD officers violated his constitutional rights under the Fourth, Fifth, and Fourteenth Amendments when they detained him without reasonable suspicion and when they seized and searched the Nissan without probable cause. Doc. No. 47 at 1, 4.

### A. Seizure of Defendant

Defendant first contends that he was improperly detained because he was the driver of the Nissan rather than an occupant of the Jeep that the juvenile with the firearm was seen entering. *See* Doc. No. 47. He further alleges that although there was some interaction between the occupants of the Jeep and Nissan, the juvenile did not interact with anyone in the Nissan. *Id.* at 7.

A "brief investigatory stop[] of the sort identified in *Terry v. Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L.Ed.2d 889 (1968)" is a type of personal seizure. *United States v. Johnson*, 599 F.3d 339, 344–45 (4th Cir. 2010). Officers "do not need a warrant or probable cause to briefly detain a civilian; instead, [they] may briefly detain a civilian when [they have] reasonable, articulable, personalized suspicion that the person is or has been engaged in illicit activity." *United States v. Avagyan*, 164 F. Supp. 3d 864, 881–82 (E.D. Va. 2016), *aff'd sub nom. United States v. Ghazaryan*, 685 F. App'x 222 (4th Cir. 2017) (citing *United States v. Smith*, 994 F. Supp. 2d 758, 761–62 (E.D.Va.2013) *aff'd*, 583 F. App'x 196 (4th Cir. 2014)) (citation omitted). *See also Terry,* 392 U.S. at 21. This "so-called *Terry* stop allows [officers] whose observations lead [them] to suspect that a particular person has committed or is about to commit a crime to detain the person briefly in order to 'investigate the circumstances' provoking that suspicion." *Johnson*, 599 F.3d at 345 (quoting *United States v. Brignoni–Ponce,* 422 U.S. 873, 881 (1975)) (citation omitted).

Reasonable suspicion is "a less demanding standard than probable cause," and requires officers to have "at least a minimal level of objective justification for making the stop." *United States v. Critchfield*, 81 F.4th 390, 393 (4th Cir. 2023) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)). In short, it must be "something more than an inchoate and unparticularized suspicion or hunch." *United States v. Burton*, 228 F.3d 524, 527 (4th Cir. 2000) (quoting *Terry*, 392 U.S. at 27) (internal quotations omitted). Courts assess reasonable suspicion under "the totality of the circumstances." *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

Here, the Grier Grove apartment complex was well known to CMPD for its frequent gang and drug activity, and shootings occurred there approximately weekly (including an accidental firearm discharge on the day Defendant was arrested). Officer Lerlo observed a juvenile with a firearm entering the Jeep. As officers responded, Defendant, along with up to seven other young men, including the juvenile, was seen quickly exiting one of the two vehicles and moving away from the officers.[7] In addition, the heavy winter jacket and firearm had been discarded in the Jeep, making it more difficult for the officers to distinguish the juvenile in question from the rest of the young men. Indeed, Sergeant Skipper testified that he was not certain which individuals had exited the Jeep. And, the scene was chaotic, with onlookers milling throughout the area, including around officers, the detained men, and the vehicles.

Sergeant Skipper further testified that only four of the young men were detained and handcuffed (rather than all who had exited the vehicles), as those four were believed to have specifically exited the Jeep. It took approximately seven minutes for Sergeant Skipper and Officer Lerlo to go through the pole cam footage and determine Defendant's vehicle of origin. Under the

---

[7] *See Wardlow*, 528 U.S. at 125 (a defendant's unprovoked flight from officers in area of heavy narcotics trafficking supported the officers' reasonable suspicion that defendant was involved in criminal activity and justified stop).

totality of the circumstances, the Court finds that officers had reasonable suspicion to detain Defendant for that short period of time while determining whether he had exited the Jeep.

**B. Seizure and Search of the Nissan**

Defendant next argues that the seizure of the Nissan was unreasonable and the fruits of the search should be suppressed because officers lacked probable cause to search the vehicle. He further contends that under *Terrence Byrd v. United States*, 584 U.S. 395 (2018), he had an expectation of privacy in the vehicle and its contents even though he did not own it and was not on the rental agreement. Doc. No. 47 at 6. Defendant also asserts that because he remained "near" the vehicle after exiting it, he did not relinquish that expectation of privacy. Doc. No. 47 at 6.

Even assuming Defendant had a privacy right in the Nissan (which the Court need not decide), "[t]he Fourth Amendment's protection against unreasonable searches is not implicated when the plain view doctrine applies." *United States v. Runner*, 43 F.4th 417, 421 (4th Cir. 2022). The Fourth Circuit has held that "[v]iewing an article that is already in plain view does not involve an invasion of privacy and, consequently, does not constitute a search implicating the Fourth Amendment ...." *Id.* (quoting *United States v. Jackson*, 131 F.3d 1105, 1108 (4th Cir. 1997)). Still, "[n]ot everything in plain view ... may be seized—only those items that are perceived to be contraband, stolen property, or incriminating in character." *Id.* (citation omitted). Thus, "for the plain view exception to apply, the government must show that: '(1) the officer [was] lawfully in a place from which the object [could] be plainly viewed; (2) the officer ha[d] a lawful right of access to the object itself; and (3) the object's incriminating character [wa]s immediately apparent.'" *Id.* (quoting *Jackson*, 131 F.3d at 1109).

Marijuana is illegal in North Carolina. *United States v. Vernon*, No. 2:25-CR-00004-M, 2025 WL 1840734, at *2 (E.D.N.C. July 3, 2025). Its presence in a vehicle has long allowed

officers to conduct a probable cause search under the automobile exception to the warrant requirement (which provides a lawful right of access). *United States v. Bolling*, No. 23-4572, 2025 WL 1682298, at *3 (4th Cir. June 16, 2025), *cert. denied,* 146 S. Ct. 1599, 224 L. Ed. 2d 30 (2026) (additional citations omitted). *See also See United States v. Brown*, 129 F.3d 1260 (Table), 1997 WL 720418, at *3 (4th Cir. 1997) (the illegal marijuana in the vehicle gave the officer probable cause to search it under the automobile exception to the warrant requirement); *United States v. Alston*, 941 F.3d 132, 138 (4th Cir. 2019) ("An officer's detection of marijuana creates ... probable cause."). And when "police have probable cause, the automobile exception permits "the search of every part of the vehicle ... that may conceal the object of the search."[8] *Alston*, 941 F.3d at 138 (quoting *United States v. Ross*, 456 U.S. 798, 825 (1982)).

Here Officer Earl was lawfully present at the apartment complex, and as he stood between the Jeep and Nissan, while Defendant was being identified, he looked through the Nissan's window and observed, in plain view, marijuana on the passenger dashboard and a firearm near the driver's seat. Because officers identified Defendant contemporaneously with the plain view discovery of the marijuana, and shortly thereafter of the firearm, they were justified in further detaining him while conducting a lawful probable cause search of the vehicle under the automobile exception. Accordingly, Defendant's Motion to Suppress will be denied.

## IV. ORDER

[8] Probable cause exists "when 'the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found.'" *United States v. Davis*, 997 F.3d 191, 201 (4th Cir. 2021) (quoting *United States v. Patiutka*, 804 F.3d 684, 690 (4th Cir. 2015)). The "principal components" of a court's review and determination of whether probable cause existed "will be the events which occurred leading up to the stop or search" and "whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to … probable cause." *Id.* (quoting *United States v. Brookins*, 345 F.3d 231, 235–36 (4th Cir. 2003)).

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendant's Amended Motion to Suppress (Doc. No. 47) is **DENIED**; and

2. Defendant's Motion to Suppress (Doc. No. 30) is **DENIED** as moot.

**SO ORDERED.**

Signed: August 31, 2026

Kenneth D. Bell
United States District Judge